IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHARLES M. MEARS, | ) | Civil No.: 1:13-cv-01236-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| CAROLYN A. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Arthur W. Stevens, III
      Black Chapman Webber & Stevens
      221 Stewart Avenue, Suite 209
      Medford, OR 97501

          Attorney for Plaintiff

      Bill Williams, Acting U.S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204

Kathryn Ann Miller
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

      Plaintiff Charles Mears brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits (DIB) under Title II the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks an Order remanding the action to the Agency for further proceedings.

      For the reasons set out below, the Commissioner's decision is affirmed.

## **Procedural Background**

      Plaintiff filed an application for a period of disability and disability insurance benefits on February 18, 2010, alleging he had been disabled since February 17, 2005.

      After his claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

      On November 15, 2011, a video hearing was held before Administrative Law Judge (ALJ) Marilyn Maurer. Medical Expert (ME) Ronald Devere testified at the hearing. The ALJ continued the hearing until April 10, 2012 in order for Plaintiff to obtain a neuropsychological evaluation. Plaintiff[1]; Plaintiff's wife, Lisa Mears; ME Devere; and Vocational Expert (VE)

---

[1] Plaintiff's testified only very briefly, answering a single question from the ALJ before his attorney elected to call Mrs. Mears to testify.

OPINION AND ORDER – 2

Frank Lucas testified at the supplemental video hearing. On April 12, 2012, ALJ Maurer issued a decision finding that Plaintiff had not been disabled within the meaning of the Act at any time from his alleged onset date through December 31, 2008, his date last insured.  ALJ Maurer, however, did find that at the time of her decision Plaintiff's medically determinable impairment of Huntington's chorea equaled a presumptively disabling impairment listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

In a decision dated May 24, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1961 and was 50 years old at the time of the ALJ's decision.  He completed a General Education Diploma (GED) in 1980 and received specialized training in electronics. He has past relevant work as a mail carrier for the post office.  According to Plaintiff, he stopped working in February of 2005.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant

can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## <u>Medical Record and Lay Witness Statements</u>

## I.  <u>Medical Evidence</u>

In 2010, Plaintiff was diagnosed with Huntington's chorea.  However, there is no medical evidence of this illness between Plaintiff's alleged onset date and December 31, 2008, his date last insured.  The only medical evidence of record during the relevant period is a 2006 chest x-ray unrelated to Plaintiff's condition.

In January 2010, Plaintiff was seen by emergency room physician Jeffrey Salisbury, MD. Plaintiff requested a blood test to document Huntington's disease. Plaintiff reported that he had been arrested for two DUI's in the past months and had a court date coming up.  Plaintiff told Dr. Salisbury he needed to prove that he had Huntington's and had not been driving under the influence of intoxicants.  Plaintiff reported that approximately 5 years earlier he had developed "shakiness" when he walks.  Plaintiff reported no problems with his cognitive abilities. Dr. Salisbury observed that Plaintiff displayed normal finger-to-nose movement with both the left and right hand and that his cranial nerves were grossly intact.  Dr. Salisbury noted that when observing Plaintiff's gait he did not see any signs of Huntington's chorea "or any wide-based or gait disturbance."  Although the nursing staff reported that Plaintiff was "shaky," Dr. Salisbury reported that he "evaluated patient multiple times and did not see signs of Huntington's chorea or any tremor abnormality."

Plaintiff underwent genetic testing in February 2010 which confirmed a diagnosis of Huntington's chorea.

On March 15, 2010, Plaintiff underwent a neurologic consultation with Kurt Slater, D.O. Dr. Slater observed that Plaintiff had "motor restlessness with low amplitude, low velocity, choreic-type movements of head, torso and limbs" which he tended to hide. Dr. Slater reported that Plaintiff's "gait and station are just a bit unsteady . . . but he can tandem well." Based upon his findings, Dr. Slater assessed Plaintiff as having "[m]ildly symptomatic Huntington's disease."

At the ALJ's request, Dr. William DeBolt reviewed Plaintiff's records and completed a Medical Interrogatory and Medical Source Statement dated February 2, 2011. He opined that a diagnosis of Huntington's chorea could be established for the period between Plaintiff's alleged onset and his date last insured. In completing the checkbox form, he indicated that Plaintiff could lift and carry up to 10 pounds occasionally due to impaired coordination caused by his disease. Dr. DeBolt opined that Plaintiff could sit for 7 hours, stand for 5 hours and walk for 4 hours total in an 8-hour work day and was limited to only occasionally reaching, handling, fingering, feeling, pushing and pulling. He listed Plaintiff's then current limitations as including clumsiness, gait instability, and impaired movement and opined that within a reasonable degree of medical probability, Plaintiff's limitations were first present "? 2010." In a separate section of the interrogatory, Dr. DeBolt opined that Plaintiff's impairment met or equaled a listed impairment beginning in 2010.[2]

---

[2] The Court acknowledges that Dr. DeBolt's handwritten note of the date was written over but concludes that it indicates the year 2010, which is consistent with Dr. DeBolt's notations earlier in his report and with the evidence he cites in support of his opinion which dates from 2010.

In April 2001, Dr. Slater wrote a letter responding to several questions regarding Plaintiff's condition. Dr. Slater acknowledged that Huntington's chorea is a progressive, ultimately fatal disease that can cause ataxia, abnormal movements and change in mental status. He noted Plaintiff's arrests for driving under the influence in years prior to their consultation and remarked that Huntington's disease can cause behavior that could be perceived as intoxication but that he did "not have any independent records and I cannot ascertain as to whether there were any intoxicants involved at the time."

Based on the recommendation of the ME, the ALJ ordered a neuropsychological consultation for Plaintiff. On December 9, 2011, Plaintiff was evaluated by Gregory Cole, Ph.D. Dr. Cole noted problems with concentration and attention during tasks Plaintiff was asked to attempt. Plaintiff's scores on the WAIS-IV placed him in the extremely low level of intellectual functioning. Dr. Cole opined that Plaintiff exhibited symptoms consistent with a diagnosis of a cognitive disorder, presumably related to Huntington's.

## II. Lay Witness Statements

In an affidavit dated February 18, 2011, Jerry Mears, Plaintiff's brother states that he noticed symptoms of Huntington's disease in Plaintiff in 2003. He noticed that Plaintiff's knees were "always bloody and torn up from falling" and that he was starting the "chorea movements" of twitching and jerking. Mears states that in 2004 it was "very apparent" to him that Plaintiff's disease was progressing quickly and that he noticed Plaintiff's ability to think and act quickly and to learn and remember was slowing. Mears attests that between 2005 and 2006, Plaintiff's disease was affecting his body movements severely. Plaintiff was exhibiting slurred speech, poor walking and balance, severe uncontrollable muscle spasms and chorea movements. Mears describes an incident in 2006 in which Plaintiff was arrested for driving under the influence of

OPINION AND ORDER – 7

intoxicants which Mears states was a result not of intoxicants but of Plaintiff's disease.  Mears

states that by 2007-2008, Plaintiff's condition "was so severe he could no longer do any of the

things he used to do" and he had stopped performing routine tasks.

Plaintiff's wife, Lisa Mears, submitted an affidavit dated March 11, 2011.  She states that

in 2003 Plaintiff "wanted to quit working for the Post Office and was showing signs of

Huntington's symptoms."  She states that it was "obvious" he was having problems walking at

work and was falling and scraping his knees and legs while delivering mail.  She states he was

also showing signs of muscle spasms and twitching of his feet and hands.  Mrs. Mears attests that

in 2004, Plaintiff's driving was becoming poor, he had a short attention span, and was showing

increasing forgetfulness.  According to Mrs. Mears, in 2005-2006 Plaintiff's driving was so poor

that he ran off the road, disregarded stop signs frequently and caused an auto collision that sent

people to the hospital.  She attests that he continually lost his balance causing injury to himself.

Mrs. Mears states that by 2007-2008, Plaintiff had stopped performing routine tasks and

household chores and needed assistance with personal hygiene.  She states that at this time she

was required to take on all household responsibilities.

Mrs. Mears also testified at the hearing before the ALJ. In response to questioning from

the ALJ, Mrs. Mears testified that Plaintiff never went to see a doctor between 2005 and 2010

because he "was in denial."  She testified that Plaintiff continued to drive until he was forced to

surrender his driver's license sometime around 2010.  Mrs. Mears stated that she never

mentioned Plaintiff's condition or suggested that he see a doctor because "it was just something

that you just didn't mention."  She testified that "we all knew he had it, but we were kind of too

embarrassed to say something to him about it, so it kind of just – went under the rug for many

years."

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff last met the insured status requirements for disability insurance benefits on December 31, 2008.

At the first step of her disability determination, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the date of his alleged onset of disability and his date last insured.

At the second step, the ALJ found that Plaintiff had the medically determinable impairment of Huntington's chorea.  However, the ALJ concluded that through his date last insured, Plaintiff did not have an impairment or combination of impairments "that significantly limited the ability to perform basic work-related activities for 12 consecutive months.  She therefore found that, through his date last insured, Plaintiff did not have a "severe" impairment. However, as noted above, the ALJ found that at the time of her decision Plaintiff's medically determinable impairment of Huntington's chorea did equal a presumptively disabling impairment listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Based upon her findings at the second step, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time from his alleged onset date through his date last insured.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews</u>, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

## <u>Discussion</u>

In the introduction to his brief, Plaintiff contends that the ALJ erred by failing to follow Social Security Ruling ("SSR") 83-20 in determining his remote onset date, improperly rejected lay witness evidence, improperly substituted her own opinions for those of treating and examining medical sources and erred in relying on the opinion of a VE that was based on a hypothetical that failed to accurately reflect Plaintiff's condition.  Although Plaintiff sets out five separate assignments of error in his introduction, his argument and Defendant's Response address these contentions within the context of two main issues: the ALJ's treatment of the lay witness evidence and her failure to comply with SSR 83-20.

OPINION AND ORDER – 10

I. **Requirements of SSR 83-20**

Social Security Ruling 83-20 states, in relevant part:

In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.

* * *

In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment. The weight to be given any of the relevant evidence depends on the individual case.

* * *

When medical or work evidence is not consistent with the allegation [of onset date], additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

* * *

How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

* * *

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. . . . The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.

* * *

The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of

at least 12 months or result in death. Convincing rationale must be given for the
date selected.

SSR 83-20

Plaintiff contends that the ALJ erred in determining his remote onset date because she
failed to properly assess and consider the information provided by family members and failed to
draw reasonable inferences from all of the evidence of record in consultation with a medical
expert as required by SSR 83-20.

**II.  Lay Witness Evidence**

Plaintiff argues that the ALJ improperly rejected lay witness evidence. As noted above,
SSR 83-20 sets out the value of lay witness testimony in a situation where an ALJ is faced with a
paucity of medical evidence.  In general, lay testimony about a claimant's symptoms is
competent evidence which the ALJ must take into account unless she gives reasons for the
rejection that are germane to each witness. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001). A
medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100
F.3d 1462, 1467 (9th Cir.1996).

Here, it appears from the record that the ALJ reviewed the affidavits submitted by
Plaintiff's wife and brother concerning their observations of Plaintiff's symptoms between 2003
and 2008 and also considered Mrs. Mears' hearing testimony. The ALJ ultimately found that
these statements, while well-intentioned and not deliberate mischaracterizations of Plaintiff's
past symptoms, were "highly suspect as to accuracy. . . ."

In support of her rejection of the lay witness evidence, the ALJ cited the observations of
examining physicians Drs. Salisbury and Slater that contradicted lay witness descriptions of
Plaintiff's symptoms, the more than two year passage of time between when the statements were
made and Plaintiff's date last insured, and a complete absence of contemporaneous self-reports

or medical evidence during the relevant period despite the severity of the symptoms alleged and their alleged impact on the lives of Plaintiff and his wife. Based upon my review of the record, I conclude that the ALJ here satisfied the requirement that she provide reasons that are "germane" for discounting the lay witness statements.

The basic problem for Plaintiff is that there is no medical evidence that he was disabled prior to the date last insured. Other than a single unrelated x-ray report from 2006, there is, in fact, no evidence at all from the period between his alleged onset date and his date last insured. Lay evidence as to his symptoms prior to 2008 may explain or supplement medical evidence, but it cannot serve as a substitute for it. As noted above, SSR 83-20 requires that "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record" and the judgment as to how long the disease existed at a disabling level of severity "must have a legitimate medical basis." The Ruling goes on to state that the "impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record."

Drs. Devere, Slater, and DeBolt all acknowledged that Huntington's chorea is a progressive illness that, in general, ultimately leads to debilitating impairments. However, there is a complete absence of contemporaneous lay or medical evidence that suggests that Plaintiff was experiencing symptoms at a level that significantly limited his ability to perform basic work activities prior to his date last insured. What the record does include are opinions of examining physicians that in 2010, more than a year after Plaintiff's date last insured, Plaintiff's progressive illness was manifesting in only "mild" symptoms. Based on the evidence of record, it was reasonable for the ALJ to conclude that this suggested that Plaintiff "had even less impairment during the previous year." An ALJ may properly reject lay testimony as contradicted by the

OPINION AND ORDER – 13

medical record. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir.2005) ("Inconsistency with medical evidence is [a germane] reason [for discrediting lay testimony]."); Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.2006)(ALJ may reject lay testimony based on the absence of contemporaneous complaints in the medical record).

The ALJ also found unpersuasive Mrs. Mears' explanation for why Plaintiff failed to seek any treatment during the relevant period.  She noted that Plaintiff testified that he did not go to the doctor because he "read on the internet that the condition was incurable." Mrs. Mears testified that the family "was too embarrassed" to talk about Plaintiff's illness or ask him to seek treatment and so "it kind of just – went under the rug for many years."  The ALJ found these explanations inconsistent with the witnesses' allegations of the severity of Plaintiff's symptoms and the alleged impact on their lives. I conclude that these inconsistencies are germane to Mrs. Mears. Valentine v. Comm'r. Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)

While other reasons cited by the ALJ for rejecting lay witness evidence are perhaps not as appropriate here, on this record the ALJ provided sufficient specific and germane reasons for rejecting the lay witness evidence. See, e.g., Carmickle, 533 F.3d 1155, 1162 (9th Cir. 2007) (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## III. Compliance with SSR 83–20

As noted above, Plaintiff contends that the ALJ erred in determining his remote onset date because she failed to draw reasonable inferences from all of the evidence of record in consultation with a medical expert as is required by SSR 83-20.  Specifically, Plaintiff argues that the ALJ disregarded the requirements of SSR 83-20 because she sought to "establish" rather than reasonably infer when Plaintiff's impairment became disabling and that her inferences as to

OPINION AND ORDER – 14

onset date were unsupported by the record in light of the medical expert testimony and lay witness statements regarding Plaintiff's limitations during the relevant period. I disagree.

Here, the ALJ found that Plaintiff's condition met the applicable listing for a presumptively disabling impairment as of the date of hearing. However, she noted that there was "no medical evidence of Huntington's chorea between the alleged onset date and the date last insured."  Because the ALJ found that Plaintiff became disabled at some point between his alleged onset date and the date of her decision, she was required to call upon the assistance of a medical expert in order to make a reasonable inference regarding Plaintiff's onset date.  Because there was a paucity of medical evidence, SSR 83-20 directs that she also explore other sources of information, including that from family members.  Here, the ALJ fulfilled both of these requirements.

As the medical expert called upon to testify at Plaintiff's hearing, neurologist Dr. Ronald Devere reviewed both the medical and lay evidence of record and was questioned by both the ALJ and Plaintiff's counsel. Dr. Devere opined that Plaintiff had developed Huntington's chorea at some point during the relevant period but testified that there was not enough data to determine if his impairment became disabling prior to his date last insured.  He acknowledged that there was evidence of "balance, and tremor, and ticks to show the disease had been going on" in 2005 but that there were no notes describing or complaints about cognitive impairments from the disease. Dr. Devere testified that there were "definitely physical impairments, not cognitive, initially, at least up to 2008.  I don't think that precluded necessarily no work . . . ." Tr. 58. When asked whether a 2007 citation for driving under the influence provided evidence of physical limitations from Huntington's, assuming it was a result of Plaintiff's symptoms and not of intoxication, Devere testified that Plaintiff could have had impaired driving based on the

OPINION AND ORDER – 15

findings but that didn't mean he would have necessarily been impaired working. Tr. 62.  Dr. Devere opined that 2010 neurological exam findings that reported Plaintiff could tandem walk despite motor restlessness and some unsteadiness in gait and station indicated that, at that time, Plaintiff had "pretty mild . . . overall deficits . . . ." Tr. 64 He also testified that such a finding would be a major discrepancy from lay witness reports concerning Plaintiff's balance issues.

The ALJ was required to establish Plaintiff's onset date. SSR 83-20(essential that the onset date be correctly *established* and supported by the evidence)(emphasis added). Because there was no medical evidence establishing the date Plaintiff's impairment became disabling, the ALJ properly consulted with a medical expert. The ME considered the medical and lay witness evidence and provided his opinion at the hearing.  He acknowledged that the available evidence was insufficient to support a specific determination of when Plaintiff's impairment became disabling but noted that medical evidence indicated that in 2010 Plaintiff was exhibiting "pretty mild . . . overall deficits."

The ALJ also noted that in January 2010, examining physician, Dr. Salisbury, "did not see signs of Huntington's chorea or any tremor abnormality and in March 2010, examining physician, Dr. Slater, considered Plaintiff's presentation to be of "mildly symptomatic Huntington's disease."  Both physicians' observations were made more than a year after Plaintiff's date last insured.

The ALJ complied with the provisions of SSR 83-20 that she consult with an ME and gave proper consideration to ME Devere's opinion testimony as well as the other medical evidence of record. The ALJ's conclusion that Plaintiff did not have a disabling impairment prior to his date last insured was reasonable and was not unsupported by the medical record. See SSR 83-20(judgment as to how long disease has been disabling must have a legitimate medical basis

and "can never be inconsistent with the medical evidence of record").  The ALJ was only obligated to consider, not accept, the information provided by Plaintiff's family and, as discussed above, her assessment of that evidence was free of harmful error.

Based on my review of the record, I conclude that the ALJ reasonably inferred that Plaintiff's onset date post-dated December 31, 2008, his date last insured. The ALJ's findings are supported by substantial evidence. Plaintiff has failed to demonstrate error in the ALJ's assessment of lay evidence and failed to meet his burden of establishing the existence of a severe impairment or combination of impairments prior to his date last insured.  Although Plaintiff's interpretation of the evidence is not without merit, so long as the ALJ's findings are supported by substantial evidence in the record as a whole, the court must uphold the Commissioner's decision even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039–40. Accordingly, the Commissioner's decision is affirmed.

## Conclusion

For the reasons set out above, the Commissioner's decision is AFFIRMED and this action is DISMISSED with prejudice.

DATED this 28th day of July, 2015.


    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge


OPINION AND ORDER – 17